UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN BERMAN, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 17-cv-5324 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| YRC FREIGHT, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathan Berman brings this suit against YRC Freight, alleging sexual harassment, disability discrimination, and retaliation in violation of the Illinois Human Rights Act ("IHRA"), and battery under Illinois common law. Currently before the Court is YRC Freight's motion for summary judgment [49] pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, YRC Freight's motion is granted

**Background**

The following facts are undisputed unless otherwise noted. YRC Freight is a Delaware corporation with its principal place of business in Kansas. Berman is an Illinois resident who began working as a janitor in YRC Freight's Chicago Heights, Illinois terminal in 2013.

*Disciplinary Conduct*

Berman was written up on July 18, 2014 based on a confrontation with a co-worker. Berman received a written warning for yelling profanities at a coworker as well as insubordination on September 15, 2014. He received another written warning on March 25, 2015, for violating a safety rule. Jennifer Wilson, YRC Freight's Shift Operations Manager, issued a written warning to Berman

1

on July 16, 2015, for operating a jeep on the property without wearing a seatbelt in violation of YRC Freight's safety policy. Berman was written up on August 17, 2015 for being absent from work without any remaining sick days. Wilson also issued a write up to Berman on August 25, 2015 for taking an unscheduled break.

*Berman's Allegations*

During his employment with YRC Freight, Berman reported to Larry Postma. When Berman asked Postma for some equipment on one occasion in May 2015, Postma wrapped his hands around Berman's shoulder and stated: "Don't worry. We'll take care of you and make sure you don't get into any trouble." Berman alleges that this exchange occurred in front of co-workers. He testified that he was offended by this incident ("May 2015 Incident").

Berman testified that while he was exiting a bathroom stall on July 23, 2015, Postma was standing outside the stall, looking at him with his arms folded. Berman testified that he said "hi" to Postma, immediately washed his hands, and left the bathroom. That same day, Berman reported this incident to YRC Freight's "EthicsPoint" hotline as well as Margie Leahy, the Human Resources Manager. The next day, Leahy met with Berman concerning this incident ("Bathroom Incident"). Berman also informed Leahy of another incident involving Postma in the lunchroom ("Lunchroom Incident"). Berman stated that while he was sitting in the lunchroom, Postma walked up behind him, began massaging Berman's shoulders, and asked "how are you doing?" Berman testified that he felt Postma's penis on his back during what he described as a "two-second exchange." Leahy informed Berman that she would investigate the allegations.

Leahy's investigation revealed that: Postma was responsible for checking the restrooms for graffiti; Postma had never been accused of similar sexual conduct in his 36 years with YRC Freight; and Berman could not identify any witnesses to the Lunchroom Incident or the May 2015 Incident.

2

After Leahy informed Berman of his findings, he told her that he was feeling paranoid and having trouble in his personal life.

*Medical Treatment*

Berman began seeing nurse practitioner, Kathryn Cavitt ("Nurse Cavitt"), at Benchmark Psychiatric Services in March 2015. Over the course of her treatment, Nurse Cavitt diagnosed Berman with bipolar disorder and unspecified psychosis. Berman checked into Chicago Behavioral Hospital on August 10, 2015, where he reported that he had been drinking heavily the past two weeks and felt paranoid about people at work seeking to fire him. After being discharged from Chicago Behavioral Hospital, Berman checked himself into an emergency room at a local hospital and remained hospitalized until August 13, 2015. Berman did not report to work from August 10, 2015 through August 14, 2015.

After Berman filled out a claim for disability on August 26, 2015, Nurse Kathryn Cavitt completed the medical portion of his Proof of Claim and indicated that Berman was unable to perform any work from August 26, through September 23, 2015. Berman did not return to work on September 23, 2015.

Nurse Cavitt wrote a letter to YRC Freight on February 22, 2016, stating that Berman would not be able to perform any work with or without an accommodation. Nurse Cavitt further stated that Berman would not be able to return to work in the "foreseeable future" due to continued mental health difficulties and struggles to adjust medications. As Berman had been out since August 26, 2015, YRC Freight considered this letter as a letter of voluntary resignation from Berman. While visiting the unemployment office sometime in February 2016, Berman was informed that he was not eligible for benefits because he had been fired.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and if done, judgment as a matter of law should be granted in its favor. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**Discussion**

As mentioned previously, Berman alleges sexual harassment, disability discrimination, and retaliation under the IHRA. Illinois courts apply the federal framework for discrimination claims brought under the IHRA. *See Volling v Kurtz Paramedic Services, Inc.* 840 F.3d 378, 382-83 (7th Cir. 2016); *Van Campen v. Int'l Business Machines Corp.*, 326 Ill.App.3d 963, 260 Ill.Dec. 886, 892, 762 N.E.2d 545, 551 (2001). As such, the Court will analyze Berman's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. and the Americans with Disabilities Act.

*Count I: Sexual Harassment*

YRC Freight argues that Berman's sexual harassment claim fails as a matter of law. To establish a *prima facie* case for sexual harassment, Berman must show that: (1) he was subject to unwelcome sexual conduct, advances, or requests; (2) because of his sex; and (3) the conduct was severe or pervasive enough to create a hostile work environment. *See EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018).

Berman's sexual harassment claim is based on three incidents. First, Postma wrapping his arms around Berman's shoulders and stating, "Don't worry. We'll take care of you and make sure you don't get into any trouble." Second, Postma observing Berman as Berman exited a bathroom stall. And third, Postma massaging Berman's shoulders, asking "how are you doing?" where Berman felt Postma's penis on his back.

The Court finds that the May 2015 Incident did not constitute unwelcome sexual conduct. While the conduct does not have to be overtly sexual, there must be evidence that delineates harassment from generally inappropriate conduct. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) ("This Court has on many occasions distinguished between harassing and merely objectionable conduct."). Similarly, the Bathroom Incident lacks any sexual connotation that would lend this Court to determine unwelcome sexual conduct. *See id.*

Even if the Court considered these incidents to be unwelcome sexual conduct, Berman fails to demonstrate that Postma's conduct towards Berman occurred because of his sex. *See Wholesale Corp.*, 903 F.3d at 626. In his response brief, Berman asserts that Postma did not behave this way towards women. But conclusory statements, totally unsupported by evidence are insufficient at the summary judgment stage. *Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 893-94 (7th Cir. 2003) (internal citation omitted). Berman's failure to present evidence showing that his sex played a role in Postma's alleged conduct is fatal to his *prima facie* case.

Furthermore, Berman fails to demonstrate that Postma's conduct was objectively severe or pervasive. Plaintiffs must show that the conduct was severe or pervasive from both an objective and subjective viewpoint. *See Cosco Wholesale Corp.*, 903 F.3d at 625. To be objectively pervasive or severe, the conduct must be extreme. *Id.* (internal citation omitted). It is the Court's role to consider all the circumstances including the frequency of the conduct, whether it is physically threatening or

humiliating, or whether it interferes with an employee's work performance. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002).

The fact that these actions were isolated, relatively incidental, and did not contain threats or acts of humiliation cuts against an inference of severe or pervasive conduct. *See id.* at 463-64 (finding no sexual harassment despite complaints of a supervisor rubbing her back on two occasions and staring at her chest); *see also Swyear v. Fare Food Corp.*, 911 F.3d 874, 881-82 (7th Cir. 2018) (holding no sexual hostile environment where supervisor made sexual comments, touched plaintiff's back, and asked for sex). The Court appreciates Berman's concerns about inappropriate conduct in the workplace. But a review of the evidence does not demonstrate that a factual issue exists as to whether Postma's conduct was pervasive or severe from an objective viewpoint. Consequently, Berman has failed to establish a *prima facie* case for sexual harassment. YRC Freight's motion for summary judgment against Count I is granted.

*Count II: Disability Discrimination*

To establish a *prima facie* case for disability discrimination, Berman must demonstrate that he: (1) is person with a disability; (2) is able to perform the essential functions of the job with or without a reasonable accommodation; and (3) suffered an adverse employment action because of his disability. *See Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). If Berman does this, the burden shifts to YRC Freight to present a legitimate non-discriminatory reason for the adverse employment action. *See Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The burden then shifts back to Berman to present evidence that YRC Freight's stated reasons are pretext. *See id.*

It is undisputed that Berman did not return to work after August 26, 2015. The Seventh Circuit has established that a person whose disability prevents them from coming to work regularly cannot perform the essential functions of the job. *See Basden v. Professional Transp., Inc.*, 714 F.3d 1034,

6

1037 (7th Cir. 2013) (internal citation omitted). A plaintiff's ability to perform the essential functions of the job is determined from the date of the adverse employment decision. *See id.* (citing *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)).

The parties dispute whether Berman suffered an adverse employment action. YRC Freight contends that Nurse Cavitt's letter served as a voluntary resignation. Berman argues that he was fired. In looking to the evidence in a light most favorable to Berman, the Court will consider Berman terminated on February 22, 2016, the date YRC Freight received the letter from Nurse Cavitt. *See Basden*, 714 F.3d at 1037.

YRC Freight argues that Berman fails to demonstrate that he can perform the essential functions of the job with or without a reasonable accommodation. Specifically, YRC Freight points to the letter sent by Nurse Cavitt which stated that Berman could perform "no work" and gave no timetable when Berman would be able to return.

Berman fails to put forth evidence that he was qualified to perform the essential functions of the job with or without reasonable accommodation. In his response brief, Berman argues that he was qualified because he returned from the hospital without any restrictions prior to his final leave of absence. The Seventh Circuit has established, however, that the date of the adverse employment action is determinative. *See Basden*, 714 F.3d at 1037. Nurse Cavitt unequivocally stated, in her February 22, 2016 letter, that Berman was unable to work with or without an accommodation and would not be able to return in the foreseeable future. As the Seventh Circuit made clear in *Weigel v. Target Stores*:

> When employees (an/or their physicians) represent that they are "totally disabled," "wholly unable to work," or some other variant to the same effect, employers and factfinders are entitled to take them at their word; and, such representations are relevant evidence of the extent of a plaintiff's disability, upon which an employer may rely in attempting to establish than an ADA plaintiff is not a 'qualified individual' with a disability.

122 F.3d 461, 467-68 (7th Cir. 1997).

7

On his disability claim provided by the local union, Berman asserted that he was "totally disabled" and unable to work beginning August 26, 2015 and never returned to work after that day. Nurse Cavitt's letter reaffirmed his inability to work on February 22, 2016. In taking him at his word, this Court cannot find that Berman was able to perform the essential functions of the job at the time of his termination. He fails, therefore, to establish a *prima facie* case of disability discrimination. YRC Freight's motion for summary judgment against Count II is granted.

*Count III: Retaliation*

To establish a *prima facie* case of retaliation, Berman must demonstrate that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (internal citation omitted). To survive summary judgment on a retaliation claim, a plaintiff must provide evidence that would permit a reasonable fact finder to infer retaliation by the employer. *See Castro v. DeVry University, Inc.*, 786 F.3d 559, 564-65 (7th Cir. 2015) (internal citation omitted). Evidence can include suspicious timing, an indication that similarly situated employees received different treatment, and proof that the employer's proffered reason for the adverse employment action was pretextual. *Id.* at 565. (internal citation omitted).

Berman contends that YRC Freight retaliated in three ways. In his complaint, Berman alleges, that YRC Freight fired him in March 2016, within weeks of receiving information about his sexual harassment claim. Second, in his response brief, Berman argues that Leahy ignored his complaint of sexual assault. Third, Berman asserts that his August 2015 write up was retaliation for being hospitalized.

At the outset, neither Leahy ignoring his claim, nor his August 2015 write up, constitute adverse employment actions. Notably, Berman's testimony that his sexual assault claims were ignored are contradicted by other undisputed evidence that Leahy spoke with Berman about the

investigation following his complaint in July 2015. Nevertheless, Berman does not explain how ignoring his claim could constitute an adverse employment action for the purposes of retaliation. *See Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). Further, it is undisputed that Berman's write up in August 2015 did not contain any tangible job consequences. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (stating that "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence" are not adverse employment actions) (internal quotation omitted).

Berman was not suspended, demoted, nor did he experience any change in job responsibilities after the August 2015 write up. But even if he did, the record demonstrates that he was written up for being absent from work without any remaining sick days. Berman does not present any evidence that shows YRC Freight's reason for the write up was pretextual, meaning "it was a lie." *See Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 601 (7th Cir. 2010) (internal quotation omitted).

The Court notes that Berman seems to have abandoned the assertion that his termination was retaliatory, as this argument was not mentioned in his response brief. At the summary judgment stage, a party may not merely rely on pleadings, but rather, must articulate specific facts that demonstrate a genuine issue for trial. *See Anderson*, 477 U.S. at 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202. Berman does not even attempt to present evidence showing that the termination was retaliatory.

Regardless, the record undercuts any inference of a causal connection between Berman's claim of sexual assault and his termination. The evidence demonstrates that Leahy informed Berman about her investigation in July 2015. Moreover, the claim of sexual assault came more than six months before his termination, thus undermining a finding of retaliation. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (finding that a three-month gap between the protected

9

activity and the adverse action, alone, could not demonstrate retaliation). Without a showing of a causal connection between any protected activity and his termination, Berman fails to establish a *prima facie* case of retaliation. YRC Freight's motion for summary judgment against Count III is granted.

*Count IV: Battery*

Finally, Berman's argument that YRC Freight is responsible for Postma's alleged sexual assault under the doctrine of *respondeat superior* fails as a matter of law. In Illinois, an employer can only be liable for an employee's torts that are committed within the scope of employment. *See Adames v. Sheahan*, 233 Ill.2d 276, 208, 330 Ill.Dec. 720, 909 N.E.2d 742 (2009). In Illinois, acts of sexual assault are outside the scope of employment. *Deloney v. Board of Education of Thorton Township*, 281 Ill.App.3d 775, 783, 217 Ill.Dec. 123, 666 N.E.2d 792 (1996). For this reason, even if Berman was able to prove that Postma committed sexual assault, YRC Freight would be outside the purview of liability. YRC Freight's motion for summary judgment against Count IV is granted.

**Conclusion**

For the reasons explained above, YRC Freight's motion for summary judgment [49] granted. This case is dismissed.

**IT IS SO ORDERED.**

Date: 9/16/2019

Entered: _____
SHARON JOHNSON COLEMAN
UNITED STATES DISTRICT JUDGE